## CLAMAGARAN vs. SACERDOTTE.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. The defendant, some years since, was in embarrassed circumstances, and being unable to discharge his debts, made an arrangement with his creditors, by which, time was accorded him to pay them. The conditions of this indulgence, among other things, were, that he should place, in the hands of persons designated by the creditors, notes due to him for the sale of landed estate, and that these agents should have the power to collect the rents of certain houses belonging to the defendant. He was also to pay into their hands, a sum of money, sufficient, with the notes and rents already stated, to discharge the principal of the debts due by

A debtor who makes a concordate with his creditors, must pay the expenses of collecting the debts assigned to the trustees.

He is not responsible for fees paid gratuitously to counsel.

Evidence may be given to show money was paid previous to the day on which the receipt is executed.

CLAMAGARAN
*vs.*
SACERDOTTE.

him; the interest being abandoned. Out of these moneys the agents were to pay the creditors, according to the rank which their respective demands entitled them to hold on their debtor's estate. The plaintiff, together with one Macarty, were designated by the creditors in the act. They are called syndics, throughout the whole of it, and are authorised to raise mortgages on his estate, which he was about to sell, and receive a mortgage from him, on the property which he was partly to receive in exchange for it. Macarty, soon after the execution of the act, died, and the plaintiff was empowered by the creditors, to act alone. He did so, and brought this action, as well in his own name as in that of the other creditors, to compel the defendant to pay the balance due by him, after crediting him with the amount received on the notes, and on the rents of the houses.

The defendant, in his answer, denies that the other creditors had authorised the plaintiff to sue him; and averred that he was indebted to the respondent, for which he prayed judgment in reconvention. The names of these creditors were subsequently striken from the record, on application of the petition-

er, and the cause continued between him and the defendant.

There have been three trials in the court below, and as many verdicts in favor of the plaintiff. In the first, the jury found for the plaintiff the sum of $230 77-100, but the court below granted a new trial. In the second, the verdict was for $1560 21-100. On appeal, the judgment rendered in conformity therewith, was reversed, and the cause remanded. It now returns to us with a verdict, and judgment thereon, for $404.

The points in dispute between the parties, are three. The first is in relation to the commission claimed by the plaintiff, for transacting the business of the defendant. The second, is in repect to a fee paid to the counsel, by the petitioner, for advice, &c. The third, relates to a credit of $500, to which the defendant says he is entitled, and which he insists the plaintiff has not allowed him.

The character in which the plaintiff acted, and his right to fees, for collecting rents, raising mortgages, and paying over the moneys received by him, has been the subject of vehement contestation at the bar. His counsel has placed his claim to remuneration, on

the ground of his being called syndic, in the act of concordat, and insists that the appellation thus bestowed on him, conferred a right to all the compensation which the law grants to agents of this kind, when the debtor makes a *cessio bonorum;* but to this position we cannot accede. The statute only gives commissions to syndics who are appointed under the act by which the rate of these commissions are established. Agents appointed in any other case, or in any other mode, may have a claim to compensation from their principal, for services rendered, but they cannot demand it under the provisions of the act in relation to insolvent debtors, because they are not acting in the cases provided for by the statute.

Equally unsupported do we consider the argument of the defendant, that the concordat amounted to a *dation en paiement.* We have examined with attention, the act, and we are satisfied no such deduction can be made from it. In no part of the instrument do the creditors declare that their claims are discharged, or is there any thing found in it to induce us to conclude they received the promise of the defendant, to pay them in the

manner therein stated, as payment of their credits. On the contrary, the opposite conclusion may be fairly drawn from it. The whole contract is executory. The defendant promises to put the syndics in possession of the notes to be given in the sale of his property to Andry; he engages that the rents which they are authorised to collect from his tenants, will amount to $1000 a year; and that if they do not, he will annually make good the defect. At the expiration of three years, he promises to pay the sum of $3400, to complete the amount due to his creditors.

After these stipulations, and some others not necessary to be set out, the creditors declare that *"au moyen du present concordat et son execution"* "in consequence of the present concordat, *and its execution,* the mass of the creditors abandon to Sacerdotte, all interest due them up to that day, on their respective credits, and the said creditors grant him a delay of three years, to pay the whole amount of the capital, and do also release and abandon to him, all the interest which might accrue to them until the end of three years."

The final release of the debtor is thus made to depend expressly on the execution

Eastern District.
*February*, 1830.

CLAMAGARAN
*vs.*
SACERDOTTE.

of the concordat.   If, then, the notes arising from the sale of the property, had not been delivered up to the syndics; if the rents had not annually amounted to $1000, or the defendant had not supplied the balance that might be wanting; and finally, if the $3400 had not been paid, as promised by him, we think it quite clear, the original claims of the creditors, which were suspended by the concordat, would have revived in full force. And hence we conclude that this part of the defence furnishes no ground for saying the defendant had no interest in the collection of the debts placed in the hands of the agent, and was not responsible for the expenses attending it.

Each party has insisted the plaintiff was the agent of the other. In this, as in many other instances, truth lies between the litigants. He was the agent of both, for both had an interest in suing for the moneys collected, and the claims liquidated. The plaintiff was the agent of the creditors, in receiving the money from the defendant, and in paying it over to them. He was the agent of the defendant in collecting money from others. As the latter was compelled to make

good the deficit which might exist, he had a right to call on the former for an account, and could have forced him to have furnished it. We are unable to distinguish this case from several others decided in this court, where attorneys, charged with the collection of debts, have received from the debtor, obligations to put in suit, out of the funds proceeding from which, they were to discharge the claims first placed in their hands. In such cases, we have uniformly considered, that the expenses of collection, should be borne b y the party who placed the obligations in the hand of the agent, to discharge his debt. The legal correctness, and the equity too, of such a rule, where there exists no express sti pulation to the contrary, we think cannot be doubted. *See Johnson* vs. *Stirling*, 3 *vol.* 483. *Benson* vs. *Skipp*, 5 *ib.* 154. *O'Connor* vs. *Bernard*, 6 *ib.* 572.

To the services, therefore, rendered to the defendant, in making the collections, we think the plaintiff has a right to claim compensation from him, and we see nothing in the record which enables us to say the jury placed too high an estimate on them.

II. The next matter in dispute, is the fee of $500 paid to an attorney. In the account of the plaintiff, this charge is made as follows: "Paid to P. A. Cuvillier, for his fees, as well for his services rendered to the insolvent, in the cession of his property, as for those rendered to the syndics posterior to the failure."

There never was any cession made by the defendant of his effects. A respite was, it is true, obtained previous to the concordat, under which the plaintiff acted, and if it were for the services rendered by the attorney, in procuring that respite, we think the payment was erroneously made. The defendant had a right to settle his own account with the attorney for these services. The appellee could not legally do so, unless it was for the benefit of the appellant, or at his request, neither of which is shown here. Then as to the services rendered since the concordat, we think that if the plaintiff, as agent of the defendant, has expended money in discharging the duty devolved on him, it is right, and law, the latter should reimburse him. But this money must not have been gratuitously, but necessarily expended, and the necessity cannot be presumed, it must be proved, to enable the

agent to recover. That has not been done in this instance. There is no proof that any difficulty occurred in collecting the debts : that any of the debtors were in default ; any suits brought ; any compromises made; any thing on which legal advice could be required. The attorney, indeed swears, he had fifty consultations with the plaintiff. On what subjects we are not informed, and these conversations the defendant should not pay for, unless they were necessary for the execution of the business entrusted to the plaintiff.

III. Before entering on the merits of the last subject of contestation, which relates to a credit claimed by the defendant, for $500, it is necessary to dispose of a bill of exceptions, taken to the testimony of a witness, on the part of the plaintiff, who proved, that the money for which he had given a receipt, had been credited to the defendant, previous to its date. His testimony was objected to, as proving against, and beyond the contents of the written document.

We are of opinion the court did not err. The receipt is in these words: *J'ai recu de M. Sacerdotte, la somme de cinq cent piastres sur ce qu'il me doit. Nouvelle Orleans*

18 *Mai.* 1824. *P. H. Clamageran.* The act is a private, not a public one. The prohibition in our code, against the reception of evidence, against or beyond what is contained in written instruments, applies particularly to those which relate to real estate. Those in relation to personal property, are governed by the general rules of evidence. In that system of jurisprudence, from which we have derived our principles in relation to proof, receipts are considered as exceptions to the general rule, and parol evidence may be given to explain, or even to contradict them. Without adopting that exception to its whole extent, we can find sufficient reason for admitting the parol evidence in this instance. Proof, that the money had been paid at a previous time, did not contradict the time of the receipt, for it does not say the money was paid on that day. It only affords a presumption of it. *Starkie on evidence, p.* 4, 1044. 1 *vol. cas.* 145. 2 *vol.* 378. 5 *ib.* 68. 9 *ib*, 310, & 8 *ib.* 389.

On the merits of this point, we concur with the jury. We think they did not err in concluding the money had been paid, previous

to the date of the receipt, and crediting in account, at the time it was paid.

Much has been said by the counsel on both sides, of the influence which the verdict of the jury should have on our deliberations. We thought the jurisprudence of the court so firmly established in this matter, and so well understood, that it scarcely afforded room for abberration at this day. The verdict of a jury has great weight in all cases, when questions of fraud, or damages, are involved. It turns the scale, when the evidence is conflicting on matters of fact, and the truth doubtful; but it has no influence, nor should it have any, where the facts being established, the rights of the parties depend on the law arising out of them. In such cases, the conclusions of the court can be more safely relied on, than those of the country. Such is the instance before us. The jury have erred, in allowing the plaintiff credit for a sum of money paid by an agent, without any evidence that this money was necessarily expended for the benefit of the principal.

This sum of $500 deducted, the moneys paid by the plaintiff, on account of the defendant, and his own claim, amounted to $4,0091,

CLAMAGARAN
*vs.*
SACERDOTTE.

74-100. He has received $13,804, and is consequently entitled to judgment for the balance, $205 74-100, deducting 171 74-$100 the balance on another account.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be anulled, avoided and reversed. And it is further ordered, adjudged, and decreed, that the plaintiff do receive of the defendant, the sum of thirty-three dellars, with costs in the court below, except those occasioned by making other parties plaintiffs: these, with the costs of the appeal, to be paid by the defendant.

*Canon* for the plaintiff, *Seghers* for the defendant.